DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

JAMES KNOX,                    )
                              )
          Plaintiff,    )
                              )
         v.             )   Civil No. 2006-97
                              )
QUEST DIAGNOSTICS, INC., and   )
CRANSTON/DOTTIN BIO-MEDICAL    )
LABORATORIES, INC.,          )
                              )
         Defendants.   )

ATTORNEYS:

**Kenth Rogers, Esq.**
St. Thomas, U.S.V.I.
    *For James Knox.*

**John H. Benham, III, Esq.**
St. Thomas, U.S.V.I.
    *For Quest Diagnostics, Inc.*

**Denise M. Francois, Esq.**
St. Thomas, U.S.V.I.
    *For Cranston/Dottin Bio-Medical Laboratories, Inc.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

Before the Court is the motion of defendant Quest Diagnostics Incorporated for summary judgment.

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

On or about December 14, 2004, James Knox ("Knox") applied for employment with Little Switzerland, a jewelry store located in St. Thomas, U.S. Virgin Islands. Little Switzerland required

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 2

Knox to take a drug test as part of its employment screening

process.

Knox went to Cranston/Dottin Bio-Medical Laboratories, Inc.

("Cranston/Dottin") to take his pre-employment drug test.

Cranston/Dottin collected a urine sample from Knox.

Cranston/Dottin then sent the urine sample to Quest Diagnostics

Incorporated ("Quest") for analysis.

Quest received the sample on or about December 15, 2004.

Quest then conducted laboratory testing on the sample. Quest

found that the sample tested positive for benzodiazepines.

Quest reported the results of its laboratory testing to

United States Investigation Services ("USIS"), Little

Switzerland's designated Medical Review Officer ("MRO"). The MRO

verified the testing results and reported the results to Little

Switzerland. Little Switzerland denied Knox's application for

employment.

Thereafter, Knox sent letters to Cranston/Dottin, Little

Switzerland, and USIS. Knox complained about the accuracy of the

test results. Knox explained that he was taking a prescribed

medication at the time of his drug test. Knox requested that he

be allowed to retake the test. Knox was not allowed to retake

the test.

On or about April 4, 2006, Knox filed suit against Quest

and Cranston/Dottin (collectively "the Defendants") in the

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 3

Superior Court of the Virgin Islands. Knox alleged that the
Defendants violated the Fair Credit Reporting Act ("FCRA"), 15
U.S.C. § 1681 et seq., by engaging in actions relating to the
delivery of an inaccurate credit report to a potential employer.
In his complaint, Knox asserts the basis for the Superior
Court's jurisdiction as V.I. CODE ANN. tit. 4 § 76, V.I. CODE ANN.
tit. 5 § 4903, 15 U.S.C. 1681o, V.I. CODE ANN. tit. 12A §§ 101 and
108, and V.I. CODE ANN. tit. 27 § 301(a).

The Defendants removed this action to this Court in June,
2006. Thereafter, Quest moved to dismiss for lack of
prosecution. Knox did not file a response to Quest's motion.
Quest thereafter filed a motion to deem its motion conceded.
Knox did not file a response to that motion.

The Court entered an order administratively dismissing this
action with leave to reopen for good cause within sixty days of
the order (the "Dismissal Order"). No party filed a motion to
reopen.

Thereafter, Knox filed a motion to remand this action to
the Superior Court for lack of jurisdiction in this Court.  The
Defendants filed an opposition to that motion.

After filing his motion to remand, Knox appealed the
Dismissal Order to the United States Court of Appeals for the
Third Circuit.  In May, 2007, the Third Circuit dismissed the
appeal for failure to timely prosecute.

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 4

In February, 2010, Knox filed a motion to reopen this action and remand it to the Superior Court. This Court granted Knox's motion to reopen and denied his motion for remand.

Thereafter, Quest filed this motion for summary judgment.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 5

matter but to determine whether there is a genuine issue for
trial." *Id.*  In making this determination, this Court draws all
reasonable inferences in favor of the non-moving party. *See Bd.
of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster
v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

### A. Fair Credit Reporting Act

Knox claims that the Defendants are liable to him under 15
U.S.C. 1681o[1] of the Fair Credit Reporting Act ("FCRA") for their
"negligent or willful failure [], as consumer-reporting agencies
that furnish a consumer report concerning plaintiff for
employment purposes, to inform plaintiff that it had reported
public record information to Little Switzerland which was likely
to have an adverse effect upon plaintiff's ability to obtain
employment, in violation of 15 U.S.C. 1681k." (Compl. at 3, ECF
No. 47-1).

The FCRA, in pertinent part, provides:

> (a)  In general. A consumer reporting agency which
>      furnishes a consumer report for employment

---

[1] 15 U.S.C. § 1681o, in pertinent part, provides

> (a)  In general. Any person who is negligent in failing to comply with
>      any requirement imposed under this title [] with respect to any
>      consumer is liable to that consumer in an amount equal to the sum
>      of—
>> (1)  any actual damages sustained by the consumer as a
>>      result of the failure; ...

15 U.S.C. § 1681o(a)(1).

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 6

> purposes and which for that purpose compiles and
> reports items of information on consumers which
> are matters of public record and are likely to
> have an adverse effect upon a consumer's ability
> to obtain employment shall—
>
> (1)   At the time such public record information
>       is reported to the user of such consumer
>       report, notify the consumer of the fact that
>       the public record information is being
>       reported by the consumer reporting agency,
>       together with the name and address of the
>       person to whom such information is being
>       reported; or
>
> (2)   Maintain strict procedures designed to
>       insure that whenever public record
>       information which is likely to have an
>       adverse effect on a consumer's ability to
>       obtain employment is reported it is complete
>       and up to date. For purposes of this
>       paragraph, items of public record relating
>       to arrests, indictments, convictions, suits,
>       tax liens, and outstanding judgments shall
>       be considered up to date if the current
>       public record status of the item at the time
>       of the report is reported.

15 U.S.C. § 1681k(a).

> A "consumer report" is defined as:
>
> any written, oral, or other communication of any
> information by a consumer reporting agency bearing on
> a consumer's credit worthiness, credit standing,
> credit capacity, character, general reputation,
> personal characteristics, or mode of living which is
> used or expected to be used ... for the purpose of
> serving as a factor in establishing the consumer's
> eligibility for ... (2) employment purposes .... 15
> U.S.C. § 1681a(d).

*Hodge v. Texaco*, 975 F.2d 1093, 1095 (5th Cir. 1992). "Workplace

drug tests ... fall within the plain language of this statute."

*Id.*

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 7

The FCRA "also excludes some transactions from coverage." *Id*. at 1096. For instance, 15 U.S.C. § 1681a(d)(2)(A) ("Section 1681a(d)(2)(A)") "excludes from coverage 'any report containing information solely as to transactions or experiences between the consumer and the person making the report....'" *Id*. "The 'transactions and experiences' provision exempts from coverage any report based on the reporter's first-hand experience of the subject." *Id*. "...as long as the report is not 'based on information from an outside source,' but rather is based solely on the reporter's own first-hand investigations of the subject, the report will fall within the 'transactions and experiences' exception." *Id*. (citing 16 C.F.R. Appendix, Part 600, at 344 (1991)).

In *Hodge v. Texaco*, 975 F.2d 1093 (5th Cir. 1992), David Hodge ("Hodge") was employed by Texaco as an oil field pumper. Texaco contracted with Mobile Health Services ("MHS") to collect urine samples from its employees at various job sites. In November, 1988, MHS conducted a random drug screening. Hodge failed the initial screening test which involved the ability to track a moving point of light with his eyes. MHS then required Hodge to provide a urine sample. MHS sent Hodge's urine sample to Laboratory Specialists, Inc. ("LSI") for drug testing. LSI reported that Hodge's sample tested positive for

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 8

tetrahydrocannabinol. Thereafter, Texaco suspended Hodge without pay and began termination proceedings.

Texaco subsequently received confirmation from Dr. Tennant, a drug rehabilitation counselor, that Hodge's sample tested positive for tetrahydrocannabinol. Texaco terminated Hodge's employment.

Thereafter, Hodge filed a complaint against LSI, Dr. Tennant, and Texaco (collectively, "the defendants"). Hodge alleged that the defendants violated the FCRA and pendent state-law claims.

LSI moved for summary judgment on the FCRA claim. LSI argued that the report from LSI to Texaco fell within the scope of Section 1681a(d)(2)(A). Specifically, LSI argued that its report was exempted from coverage under the FCRA. The trial court granted LSI's motion. Hodge appealed to the Court of Appeals for the Fifth Circuit.

On appeal, the Fifth Circuit addressed the issue of whether LSI's report consisted of LSI's "first-hand experience in performing the tests on the urine sample, not on information gathered from outside sources." *Hodge*, 975 F.2d at 1096. Hodge argued that LSI did not have first-hand experience because it relied on MHS's collection and delivery of the urine sample. The Circuit rejected Hodge's argument. The Circuit noted that

> Hodge's argument that LSI's experience with him was
> not "first-hand," because LSI did not itself collect
> the urine sample reads the "transactions and
> experiences" exclusion too narrowly. MHS's collection
> of the urine sample was a mechanical preliminary task.
> LSI did not rely on any information from MHS to
> produce its report that the urine sample labeled as
> Hodge's had tested positive for marijuana use. LSI
> merely reported the results of its scientific testing
> of the urine sample that Hodge provided them. Their
> report was based upon their experiences in testing the
> sample, not upon any outside information.

*Id.* The Circuit concluded that LSI's report to Texaco was exempt
and thus not a consumer report for the purposes of the FCRA.

Quest contends in its motion for summary judgment that its
laboratory report is similarly excluded from coverage under the
FCRA. Specifically, Quest asserts that its laboratory report is
exempted under the "transactions and experiences" provision of
the FCRA. As such, Quest contends that Knox's 15 U.S.C. §
1681k(a) claim is without merit.

In support of its contentions, Quest provides the affidavit
of Rudolph Jagdharry ("Jagdharry"), Esoteric Testing Manager for
Quest. In his affidavit, Jagdharry states that Quest received
Knox's sample on December 15, 2004. Jagdharry explains that the
sample "was examined upon receipt, its seals were intact, and
was handled and analyzed in accordance with [Quest's] standard
operating procedures." (Jagdharry Aff. 3, ECF No. 93-2).

Jagdharry maintains that "testing of Knox's specimen
confirmed the presence of the drug Oxazepam, which is a

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 10

benzodiazepine, above the designated cut-off level." *Id.* at 4.

Jagdharry states that Quest reported the results to the MRO.

Jagdharry explains that it is the role of the MRO to "determine

whether a legitimate medical explanation exists for a positive

test result." *Id.*

Also in support of its contentions, Quest provides to the

Court a copy of the collection form which was sent to it, along

with Knox's urine sample, by Cranston/Dottin. The form lists

Knox as the donor. The form names Cranston/Dottin as the

"Collection Site." (Forensic Drug Testing Custody and Control

Form, ECF No. 93-2). The form shows that it was received by

Quest on December 15, 2004. The form indicates that the seal on

Knox's urine sample was intact upon receipt by Quest.

Additionally, Quest provides to the Court a copy of a drug

test result form. The form lists Knox as the patient. The form

indicates that Knox's urine sample tested positive for

benzodiazepines. The testing laboratory listed on the form is

Quest. (Result Form, ECF No. 93-2 at 89).

The totality of Quest's evidence shows that, similar to MHS

in *Hodge*, Cranston/Dottin's role largely consisted of collecting

Knox's urine sample. Such collection was only a "mechanical

preliminary task." *See Hodge*, 975 F.2d at 1096. Although Quest

used the sample provided by Cranston/Dottin, Quest did not rely

on any information from Cranston/Dottin to produce its report

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 11

that the urine sample labeled as Knox's tested positive for benzodiazepine. Quest's report was based upon its experiences in testing Knox's sample, not upon any outside information. *See id*.

Specifically, Jagdharry's affidavit aids the Court in understanding the role of each party. Similar to MHS in *Hodge*, Cranston/Dottin's role was that of "collector." The affidavit also explains how Quest came to its conclusion that Knox's sample contained benzodiazepine. Particularly, Jagdharry explains that *testing*, rather than any information provided by Cranston/Dottin, confirmed the presence of benzodiazepine.

The information contained in both the collection and the result form lends further support for Quest's contention that it had "first-hand experience in performing the tests on the urine sample." *See Hodge*, 975 F.2d at 1096. The collection form also shows that Quest received the sample, undisturbed and untested, from Cranston/Dottin. The forms help paint the picture that Cranston/Dottin's only role was to serve as an intermediary between the primary parties. Quest received Knox's undisturbed sample and performed tests thereon. According to *Hodge*, such experience is appropriately considered "first-hand." *See id*.

Based on the evidence, the Court finds that Quest has met its initial summary judgment burden. Specifically, Quest has shown that there is no genuine issue of material fact that its drug test report is exempt under the "transactions and

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 12

experiences" provision of the FCRA. The burden of persuasion

thus shifts to Knox. Knox must show the existence of some

genuine issue of material fact.

Knox fails to present any evidence illustrating that

Quest's drug test report is not exempt under the FCRA. In his

opposition to Quest's motion for summary judgment, Knox asserts

that Quest's "only first-hand experience it had was taking a

urine sample result that was checked for accuracy and submitting

same to the prospective employer." Standing alone, Knox's bare

assertion cannot sustain a claim under the FCRA. *See generally,*

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.

1991)(explaining that the non-moving party "may not rest upon

mere allegations, general denials, or . . . vague statements . .

. .")

Indeed, just as in *Hodge*, Knox's argument that Quest's

"experience with him was not 'first hand,' ... reads the

'transactions and experiences' exclusion too narrowly." *Hodge*,

975 F.2d at 1096. Cranston/Dottin's collection of the urine

sample "was a mechanical preliminary task." *See id*. Quest's

"report was based upon [its] experiences in testing the sample,

not upon any outside information." *See id*.

Knox finds himself in a no more favorable position than the

plaintiff in *Hodge*. The conclusion can be no different. As such,

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 13

the Court finds that Quest is entitled to summary judgment on

Knox's FCRA claim.

**B. Virgin Islands Consumer Protection Law of 1973**

"Under the Virgin Islands deceptive trade practices law,

'no person shall engage in any deceptive or unconscionable trade

practice in the sale ... of any consumer goods or services....'"

*Island Insteel Sys. v. Waters*, 296 F.3d 200, 212 (3d Cir. 2002)

(citing V.I. CODE ANN. tit. 12A § 101)(prohibiting deceptive trade

practices in the "sale, lease, rental or loan" or the offer to

do so). "The private remedy for violations of § 101 provides

that 'a consumer who suffers a loss as a result of a violation

of this chapter may recover actual damages or $200, whichever is

greater." *Waters*, 296 F.3d at 212 (citing V.I. CODE ANN. tit. 12A

§ 108(b)).

For the purposes of the Virgin Islands Consumer Protection

Law of 1973, a "consumer" is defined as "a purchaser or lessee

or prospective purchaser or lessee of consumer goods or services

or consumer credit, including a co-obligor or surety." V.I. CODE

ANN. tit. 12A § 102(d).

Quest contends that Knox did not purchase or lease the

subject drug test. As such, Quest contends that Knox does not

qualify as a "consumer" under the Virgin Islands Consumer

Protection Law of 1973.

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 14

As support for its contention, Quest again directs the Court's attention to the affidavit of Jagdharry, Esoteric Manager for Quest. In his affidavit, Jagdharry states that Quest "performed the forensic laboratory testing on Knox's specimen on behalf of, and at the request of its client USIS Commercial Services." (Jagdharry Aff. 5, ECF No. 93-2). Jagdharry explains that USIS paid Quest for the testing performed on Knox's sample. Jagdharry further explains that Quest "did not arrange or provide any services with regard to the collection of Knox's specimen or the review of [Quest's] reported test result." *Id.*

Based on the evidence, the Court finds that Quest has met its initial summary judgment burden of showing that Knox is not a "consumer" under the Virgin Islands Consumer Protection Law of 1973. The burden of persuasion thus shifts to Knox to show the existence of some genuine issue of material fact.

Knox fails to present any evidence illustrating that he purchased, leased, rented, or borrowed a consumer product or service. *See* V.I. CODE ANN. tit. 12A § 101. Knox also fails to present any evidence that he is a "purchaser or lessee or prospective purchaser or lessee of consumer goods." V.I. CODE ANN. tit. 12A § 102(d). Knox's opposition to Quest's motion simply claims that his complaint pleads a cause of action under the Virgin Islands Consumer Protection Law of 1973. Knox does not address Quest's argument that Knox does not qualify as a

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 15

"consumer" under the applicable law. Standing alone, Knox's bare assertion cannot sustain a claim under the Virgin Islands Consumer Protection Law of 1973. *See generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.")

## IV. <u>CONCLUSION</u>

For the reasons discussed above, the Court will grant Quest's motion for summary judgment. An appropriate judgment follows.

S\_____

**Curtis V. Gómez**
**Chief Judge**