DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

JAMES KNOX,                           )
                                      )
                Plaintiff,            )
                                      )
          v.                          )     Civil No. 2006-97
                                      )
QUEST DIAGNOSTICS, INC., and          )
CRANSTON/DOTTIN BIO-MEDICAL           )
LABORATORIES, INC.,                   )
                                      )
                Defendants.           )

ATTORNEYS:

**Kenth Rogers, Esq.**
St. Thomas, U.S.V.I.
       *For James Knox.*

**John H. Benham, III, Esq.**
St. Thomas, U.S.V.I.
       *For Quest Diagnostics, Inc.*

**Denise M. Francois, Esq.**
St. Thomas, U.S.V.I.
       *For Cranston/Dottin Bio-Medical Laboratories, Inc.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of defendant Cranston/Dottin Bio-Medical Laboratories, Inc., for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about December 14, 2004, James Knox ("Knox") applied for employment with Little Switzerland, a jewelry store located in St. Thomas, U.S. Virgin Islands. Little Switzerland required

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 2

Knox to take a drug test as part of its employment screening

process.

Knox went to Cranston/Dottin Bio-Medical Laboratories, Inc.

("Cranston/Dottin") to take his pre-employment drug test.

Cranston/Dottin collected a urine sample from Knox.

Cranston/Dottin then sent the urine sample to Quest Diagnostics

Incorporated ("Quest") for analysis.

Quest received the sample on or about December 15, 2004.

Quest then conducted laboratory testing on the sample. Quest

found that the sample tested positive for benzodiazepines.

Quest reported the results of its laboratory testing to

United States Investigation Services ("USIS"), Little

Switzerland's designated Medical Review Officer ("MRO"). The MRO

verified the testing results and reported the results to Little

Switzerland. Little Switzerland denied Knox's application for

employment.

Thereafter, Knox sent letters to Cranston/Dottin, Little

Switzerland, and USIS. Knox complained about the accuracy of the

test results. Knox explained that he was taking a prescribed

medication at the time of his drug test. Knox requested that he

be allowed to retake the test. Knox was not allowed to retake

the test.

On or about April 4, 2006, Knox filed suit against Quest

and Cranston/Dottin (collectively "the Defendants") in the

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 3

Superior Court of the Virgin Islands. Knox alleged that the Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by engaging in actions relating to the delivery of an inaccurate credit report to a potential employer. In his complaint, Knox asserts the basis for the Superior Court's jurisdiction as V.I. CODE ANN. tit. 4 § 76, V.I. CODE ANN. tit. 5 § 4903, 15 U.S.C. 1681o, V.I. CODE ANN. tit. 12A §§ 101 and 108, and V.I. CODE ANN. tit. 27 § 301(a).

The Defendants removed this action to this Court in June, 2006. Thereafter, Quest moved to dismiss for lack of prosecution. Knox did not file a response to Quest's motion. Quest thereafter filed a motion to deem its motion conceded. Knox did not file a response to that motion.

The Court entered an order administratively dismissing this action with leave to reopen for good cause within sixty days of the order (the "Dismissal Order"). No party filed a motion to reopen.

Thereafter, Knox filed a motion to remand this action to the Superior Court for lack of jurisdiction in this Court. The Defendants filed an opposition to that motion.

After filing his motion to remand, Knox appealed the Dismissal Order to the United States Court of Appeals for the Third Circuit. In May, 2007, the Third Circuit dismissed the appeal for failure to timely prosecute.

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 4

In February, 2010, Knox filed a motion to reopen this action and remand it to the Superior Court. This Court granted Knox's motion to reopen and denied his motion for remand.

Thereafter, Cranston/Dottin filed this motion for summary judgment.

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 5

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

#### A. Fair Credit Reporting Act

Knox claims that the Defendants are liable to him under 15 U.S.C. 1681o[1] of the Fair Credit Reporting Act ("FCRA") for their "negligent or willful failure [], as consumer-reporting agencies that furnish a consumer report concerning plaintiff for employment purposes, to inform plaintiff that it had reported public record information to Little Switzerland which was likely to have an adverse effect upon plaintiff's ability to obtain employment, in violation of 15 U.S.C. 1681k." (Compl. at 3, ECF No. 47-1).

--------

[1] 15 U.S.C. § 1681o, in pertinent part, provides

> (a)   In general. Any person who is negligent in failing to comply with any requirement imposed under this title [] with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> > (1)   any actual damages sustained by the consumer as a result of the failure; ...

15 U.S.C. § 1681o(a)(1).

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 6

15 U.S.C. § 1681k, in pertinent part, provides:

(a)   In general. A consumer reporting agency *which furnishes a consumer report* for employment purposes *and* which for that purpose *compiles and reports items of information* on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—

  (1)   At the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that the public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

  (2)   Maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(emphasis added).

The term "consumer reporting agency" is "defined in the FCRA as 'any person which, for monetary fees, dues, or on a cooperative nonprofit basis, *regularly* engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports.'" *Hodge v. Texaco*, 975 F.2d 1093,

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 7

1097 (5th Cir. 1992)(citing 15 U.S.C. § 1681a)(emphasis in the original).

In *Hodge v. Texaco*, 975 F.2d 1093 (5th Cir. 1992), David Hodge ("Hodge") was employed by Texaco as an oil field pumper. Texaco contracted with Mobile Health Services ("MHS") to collect urine samples from its employees at various job sites. In November, 1988, MHS conducted a random drug screening. Hodge failed the initial screening test which involved the ability to track a moving point of light with his eyes. MHS then required Hodge to provide a urine sample. MHS sent Hodge's urine sample to Laboratory Specialists, Inc. ("LSI") for drug testing. LSI reported that Hodge's sample tested positive for tetrahydrocannabinol. Thereafter, Texaco suspended Hodge without pay and began termination proceedings.

Hodge's family requested that a Texaco executive, Gerald Rome ("Rome") investigate Hodge's pending termination. Rome instructed LSI to send a portion of Hodge's urine sample to Dr. Forest Tennant, a drug rehabilitation counselor. Dr. Tennant sent the sample to American Biotest Laboratory, Inc. ("ABL"). ABL reported to Texaco that the sample tested positive for tetrahydrocannabinol. Texaco terminated Hodge's employment.

Thereafter, Hodge filed a complaint against LSI, Dr. Tennant, and Texaco (collectively, "the defendants"). Hodge alleged that the defendants violated the FCRA and pendent state-

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 8

law claims. Hodge also alleged that LSI and Tennant were "consumer reporting agencies."

Hodge and the defendants moved for summary judgment on the FCRA claim. The trial court granted the defendants' motions. Hodge appealed to the Court of Appeals for the Fifth Circuit.

On appeal, the Fifth Circuit addressed the issue of whether Dr. Tennant was a "consumer reporting agency" for the purposes of the FCRA. The Circuit noted that "Dr. Tennant is a drug rehabilitation counselor who has worked with Texaco programs in various states. ... Because of logistical problems, he acted as a go-between for Texaco and ABL." *Id.* at 1097. The Circuit found that the record was "completely devoid of evidence that Tennant meets the basic requirement for coverage under the FCRA that he be a 'consumer reporting agency.'" *Id.* In affirming the trial court, the Circuit concluded that

> Hodge has come forward with no evidence disputing this
> basic scenario and has not demonstrated that Tennant
> regularly engages in the *collection of information
> about consumers*. The requirement that a consumer
> reporting agency engage regularly in the *collection of
> information* was obviously intended to protect
> individuals like Dr. Tennant... Thus, we conclude that
> Hodge's claim against Tennant was properly dismissed.

*Id.* (emphasis added).

Cranston/Dottin contends that it is not a "consumer reporting agency" under the FCRA. Cranston/Dottin also contends that it had no duty under the FCRA because it did not report any

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 9

findings. As such, Cranston/Dottin contends that the 15 U.S.C. §

1681k(a) is inapplicable.

In support of its contentions, Cranston/Dottin provides the

affidavit of Susan L. Cranston ("Cranston"), President of

Cranston/Dottin. In her affidavit, Cranston states that Knox

presented a preprinted form to Cranston/Dottin's lab so that

Cranston/Dottin could collect a urine sample from Knox. Cranston

explains that after Luciana Charlemagne ("Charlemagne"), a

Cranston/Dottin employee, collected a urine sample from Knox,

Charlemagne sealed the sample and sent it to Quest for testing.

Cranston maintains that Cranston/Dottin had no further

dealings with the sample after it sent the sample to Quest.

Specifically, Cranston explains that Quest did not send the

results of Knox's drug test to Cranston/Dottin. Cranston states

that Cranston/Dottin did not report the results of Knox's drug

test to any person or entity. Cranston also avers that

Cranston/Dottin had no control over the distribution of Knox's

test results.

Cranston/Dottin directs the Court to a copy of the

collection form which was presented to it by Knox on the day

Knox gave his urine sample. The form lists Knox as the donor.

The form names Cranston/Dottin as the "Collection Site."

(Forensic Drug Testing Custody and Control Form, ECF No. 86-3).

Cranston/Dottin also directs the Court to a copy of the payment invoice that it sent to Little Switzerland for its services. The invoice lists Knox as the patient. The service provided is denoted on the invoice as "DRUG SCREEN COLLECTION." (Jan. 7, 2005, Invoice, ECF No. 86-4).

Additionally, Cranston/Dottin provides to the Court a copy of Knox's drug test result form. The form lists Knox as the patient. The form indicates that Knox's urine sample tested positive for benzodiazepines. The form indicates that it was sent by USIS. The form is addressed to Little Switzerland. The testing laboratory is listed as Quest. There is no mention of Cranston/Dottin on the form. (Result Form, ECF No. 87-1).

Cranston/Dottin also provides to the Court a copy of a January 31, 2005, letter. The letter indicates that it was sent by Little Switzerland. The letter is addressed to Knox. In the letter, Little Switzerland informs Knox that it "may be unable to make [Knox] an offer of employment, *based in whole or in part, on information received from United States Investigation Services* (USIS)." (Jan. 31, 2005, Letter from Little Switzerland to Pl., ECF No. 86-6) (emphasis added).

The totality of Cranston/Dottin's evidence shows that, similar to Dr. Tennant and MHS in *Hodge*, Cranston/Dottin's role was simply that of a "go-between" for the primary parties. *See Hodge*, 975 F.2d at 1097. Cranston/Dottin's role largely

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 11

consisted of collecting Knox's urine sample. Cranston/Dottin

neither furnished a consumer report for employment purposes, nor

compiled and reported items of information for such purposes.

*See* 15 U.S.C. § 1681k(a)(explaining the duties of a "consumer

reporting agency" under the FCRA).

The information contained in the collection form, the

payment invoice, and the result form lends further support for

Cranston/Dottin's contention that it is not a "consumer

reporting agency" for FCRA purposes. According to *Hodge*,

Cranston/Dottin's task is considered "mechanical" and

"preliminary." *See Hodge*, 975 F.2d at 1096.

Based on the evidence, the Court finds that Cranston/Dottin

has met its initial summary judgment burden. Cranston/Dottin has

shown that there is no genuine issue of material fact and that

its role of collecting Knox's sample does not qualify it as a

"consumer reporting agency" under the FCRA. The burden of

persuasion thus shifts to Knox to show the existence of some

genuine issue of material fact.

Knox fails to present any evidence illustrating that

Cranston/Dottin is a "consumer reporting agency" for the

purposes of the FCRA. Knox also fails to present any evidence

illustrating that Cranston/Dottin furnished a consumer report

for employment purposes or compiled and reported items of

information. *See* 15 U.S.C. § 1681k. Knox's complaint simply

Knox v. Quest, et al.
Civil No. 2006-97
Memorandum Opinion
Page 12

asserts that Cranston/Dottin, in partnership with Quest,
qualifies as a consumer reporting agency. Standing alone, Knox's
bare assertion cannot sustain a claim under the FCRA. *See
generally, Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.
1991)(explaining that the non-moving party "may not rest upon
mere allegations, general denials, or . . . vague statements . .
. .")

     Indeed, just as in *Hodge*, "the record is completely devoid
of evidence that [Cranston/Dottin] meets the basic requirement
for coverage under the FCRA that [it] be a 'consumer reporting
agency.'" *Hodge*, 975 F.2d at 1097. Cranston/Dottin acted simply
as a liaison for Little Switzerland and the testing laboratory.

     As such, the Court finds that Cranston/Dottin is entitled
to summary judgment on Knox's FCRA claim.

**B. Virgin Islands Consumer Protection Law of 1973**

     "Under the Virgin Islands deceptive trade practices law,
'no person shall engage in any deceptive or unconscionable trade
practice in the sale ... of any consumer goods or services....'"
*Island Insteel Sys. v. Waters*, 296 F.3d 200, 212 (3d Cir. 2002)
(citing V.I. CODE ANN. tit. 12A § 101)(prohibiting deceptive trade
practices in the "sale, lease, rental or loan" or the offer to
do so). "The private remedy for violations of § 101 provides
that 'a consumer who suffers a loss as a result of a violation
of this chapter may recover actual damages or $200, whichever is

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 13

greater." *Waters*, 296 F.3d at 212 (citing V.I. Code Ann. tit. 12A

§ 108(b)).

For the purposes of the Virgin Islands Consumer Protection

Law of 1973, a "consumer" is defined as "a purchaser or lessee

or prospective purchaser or lessee of consumer goods or services

or consumer credit, including a co-obligor or surety." V.I. Code

Ann. tit. 12A § 102(d).

Cranston/Dottin contends that Knox did not purchase or

lease the subject drug test. As such, Knox does not qualify as a

"consumer" under the Virgin Islands Consumer Protection Law of

1973.

As support for its contention, Cranston/Dotton again

directs the Court's attention to the affidavit of Cranston,

President of Cranston/Dittin. In her affidavit, Cranston states

that Little Switzerland ordered Knox's drug test. Cranston

explains that Little Switzerland paid $20 to Cranston/Dottin for

collecting a urine sample from Knox.

Also in support of its contention, Cranston/Dottin offers a

copy of the payment invoice that it sent to Little Switzerland

for its services. The invoice, dated January 7, 2005, indicates

a charge of $20 for "KNOX, JAMES R." on "12/14/04." (Jan. 7,

2005, Invoice, ECF No. 86-4). The service provided is listed as

"DRUG SCREEN COLLECTION." *Id*. Little Switzerland is listed in

the "Bill To:" and "Ship To:" sections of the invoice. *Id*.

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 14

Based on the evidence, the Court finds that Cranston/Dottin has met its initial summary judgment burden of showing that Knox is not a "consumer" under the Virgin Islands Consumer Protection Law of 1973. The burden of persuasion thus shifts to Knox to show the existence of some genuine issue of material fact.

Knox fails to present any evidence illustrating that he purchased, leased, rented or borrowed a consumer product or service. *See* V.I. CODE ANN. tit. 12A § 101. Knox also fails to present any evidence that he is a "purchaser or lessee or prospective purchaser or lessee of consumer goods." V.I. CODE ANN. tit. 12A § 102(d). Knox's opposition to Cranston/Dottin's motion simply claims that his complaint pleads a cause of action under the Virgin Islands Consumer Protection Law of 1973. Knox does not address Cranston/Dottin's argument that Knox does not qualify as a "consumer" under the applicable law. Standing alone, Knox's bare assertion cannot sustain a claim under the Virgin Islands Consumer Protection Law of 1973. *See generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.")

*Knox v. Quest, et al.*
Civil No. 2006-97
Memorandum Opinion
Page 15

## IV. <u>CONCLUSION</u>

For the reasons discussed above, the Court will grant Cranston/Dottin's motion for summary judgment. An appropriate judgment follows.

S\_____

**Curtis V. Gómez**
**Chief Judge**